IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2001 Session

# FREDDIE DEAN SMITH, ET AL. v. TONY O. HALEY, M.D.

**Appeal from the Law Court for Washington County**
**No. 18245     G. Richard Johnson, Chancellor**

**FILED MARCH 2, 2001**

**No. E2000-001203-COA-R3-CV**

Freddie Dean Smith and Anita Ann Smith ("Plaintiffs") filed a medical malpractice action against Tony O. Haley, M.D. ("Defendant"). Defendant moved for summary judgment with his affidavit filed in support thereof. The motion was granted after Plaintiffs failed to file timely any competent medical proof to defeat the motion. Plaintiffs filed a Motion to Reconsider along with the affidavit of Joseph Bussey, M.D. The Trial Court granted the motion and reinstated the case to the active docket. Dr. Bussey later refused to give his deposition because he was not comfortable giving a deposition after reviewing the medical records and because he did not believe the case was going to "go this far" when he provided the affidavit. Defendant moved to strike the affidavit of Dr. Bussey and requested the Trial Court to reinstate its previous dismissal. The Trial Court granted Defendant's motion. Seeking additional time to locate another medical expert, Plaintiffs then filed a motion to alter or amend the judgment pursuant to Rule 59.04, Tenn. R. Civ. P., and for relief from the judgment pursuant to Rules 60.02(1) and 60.02(5), Tenn. R. Civ. P. The Trial Court denied this motion, and Plaintiffs appeal this denial. We affirm.

**Tenn. R. App. P. 3 Appeal As Of Right;**
**Judgment of the Law Court Affirmed; and Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSHEL P. FRANKS, J., joined.

Bob McD. Green, Johnson City, Tennessee, for the Appellants Freddie Dean Smith, et al.

James E. Brading, Johnson City, Tennessee, for the Appellee, Tony O Haley.

# OPINION

## Background

The original complaint was filed in this medical malpractice action on September 11, 1995, by Freddie Dean Smith and Anita Ann Smith ("Plaintiffs"). Tony O. Haley, M.D. ("Defendant") is a physician practicing medicine in Johnson City, Tennessee. The lawsuit centers around a surgical procedure performed on Freddie Dean Smith on September 9, 1994, by Defendant. On October 10, 1995, Defendant moved for summary judgment pursuant to Rule 56 of the Tenn. R. Civ. P. Plaintiffs did not respond to this motion. Instead, Plaintiffs filed a motion requesting that the action be voluntarily dismissed. An order granting the motion for voluntary dismissal was entered on February 23, 1996.

One year later, Plaintiffs refiled the complaint. On March 12, 1997, Defendant filed a Motion to Dismiss and/or for Summary Judgment with his supporting affidavit. This motion was set for hearing on April 21, 1997. No response was filed by Plaintiffs. At the hearing, the Trial Court agreed to allow Plaintiffs to depose Defendant. On May 7, 1997, an Agreed Order was entered which provided that Plaintiffs could depose Defendant. This Agreed Order gave Plaintiffs two weeks after receipt of Defendant's deposition transcript in which to file "competent medical evidence" establishing a genuine issue of material fact. The Agreed Order further provided that "in the absence of such evidence the Defendant shall be entitled to judgment without further notice to the Plaintiffs or their counsel." Defendant was deposed on September 3, 1997. The deposition transcript was served on Plaintiff's counsel on September 11, 1997, thereby giving Plaintiffs until September 25, 1997, in which to file their medical proof in accordance with the Agreed Order.

On September 24, 1997, Plaintiffs filed a Motion for an Extension of Time in which to file an affidavit opposing the summary judgment motion. Plaintiffs indicated that they had been in contact with a medical consulting firm in Atlanta, Georgia, and anticipated obtaining an affidavit within one week. Plaintiffs explained in their motion that they were having trouble obtaining the affidavit because of the "logistics involved in obtaining a competent medical expert in an appropriate field . . . ." Defendant opposed the extension.

On October 1, 1997, the Trial Court entered an Order granting Defendant summary judgment. In that Order, it was noted that Plaintiffs had had since "pre-September 11, 1995" in which to find an expert to support their case and thus had not been diligent in locating an expert. The Trial Court also indicated that the wording of Plaintiffs' Motion for an Extension of Time did not give any hope that Plaintiffs would be successful in locating an expert. The Trial Court stated that it would be an abuse of discretion to affirm Plaintiffs' lack of diligence.

On October 6, 1997, Plaintiffs filed a Motion to Reconsider. In support of this motion, Plaintiffs filed the affidavit of Joseph Gibson Bussey, Jr., M.D. This motion was opposed by Defendant. On February 25, 1998, the Trial Court entered an Order granting Plaintiffs' Motion to Reconsider and restoring the case to the active docket. It does not appear from the record that any

further ruling on Defendant's Motion to Dismiss and/or Motion for Summary Judgment was taken at this time.

On March 10, 1999, over one year after the case was restored to the active docket and the affidavit of Dr. Bussey was allowed, Plaintiffs filed a Motion for Continuance. The trial was scheduled for March 30, 1999. Plaintiffs sought a continuance because they had not been able to schedule the pre-trial deposition of Dr. Bussey. An Agreed Order for Continuance was entered on April 6, 1999. The case was rescheduled for trial on July 26, 1999.

Dr. Bussey's deposition was scheduled for June 3, 1999, at his office in Georgia. The day before the deposition, Plaintiffs' counsel informed Defendant's counsel that he had just received a telephone call from Dr. Bussey's office. Apparently, Dr. Bussey had gone over the medical records in preparation for his deposition and did not feel comfortable giving the deposition. Dr. Bussey stated that he had not realized that this case would "go this far" and he thought his only participation would be providing the affidavit. Defendant then moved to strike the affidavit of Dr. Bussey and further requested the Trial Court to reinstate its original Order of Dismissal entered on October 1, 1997. Defendant claimed that Dr. Bussey executed the affidavit in bad faith and was not entitled to be believed under oath in a court of law. On July 8, 1999, the Trial Court entered another Order of Dismissal striking the affidavit of Dr. Bussey from the record and dismissing the case.

On August 6, 1999, Plaintiffs filed a Motion to Alter or Amend and to Re-Instate seeking relief from the dismissal pursuant to Rules 60.02(1) and 60.02(5) of the Tenn. R. Civ. P. Plaintiffs alleged that Dr. Bussey was qualified to testify as an expert and at no time had he expressed any reluctance to testify until he elected not to testify one day prior to his scheduled deposition. Plaintiffs asserted they could not foresee that Dr. Bussey would not be willing to testify after he supplied the affidavit. They also stated that they were unable to obtain another expert witness in the nineteen day period between Dr. Bussey's refusal to give a deposition and the hearing on Defendant's motion to strike Dr. Bussey's affidavit and to dismiss the lawsuit.

On March 30, 2000, the Trial Court issued a Memorandum Opinion and Final Order Denying Plaintiffs' Motion to Alter or Amend. In that opinion, the Trial Court set forth the "distressfully long and painfully torturous history" of the lawsuit. Interpreting the motion as one brought pursuant to both Rules 59.04 and 60.02 of the Tenn. R. Civ. P., the Trial Court concluded that relief was not available to the Plaintiffs under Rule 59.04 because they had adequate time to find an expert to support their case. Addressing Plaintiffs' request for relief from the judgment pursuant to Rule 60.02(1), the Trial Court stated that it was not excusable neglect for Plaintiffs to file a medical malpractice suit without the benefit of expert testimony to substantiate the allegations, and that it was not excusable neglect to fail to follow the May 7, 1997, Order to have an appropriate expert affidavit in the record within two weeks and then claim that a contact with a medical consulting firm in Georgia should provide the needed affidavit. The Trial Court also pointed out that it was not excusable neglect to "fail to obtain the services of an expert since Dr. Bussey dropped out of the case on June 2, 1999, more than nine months ago." Lastly, the Trial Court concluded that Plaintiffs' profound lack of diligence in securing essential expert testimony was not a reason

justifying relief pursuant to Rule 60.02(5).  According to the Trial Court, Rule 60.02(5), which provides relief for "any other reason justifying relief from operation of a judgment," only applies in unique, exceptional, or extraordinary circumstances, which the Trial Court found were not present.

## **Discussion**

In the Notice of Appeal filed by Plaintiffs, they appeal only the Order entered on March 30, 2000.  In that Order, the Trial Court refused to alter or amend the judgment pursuant to Rule 59.04 of the Tenn. R. Civ. P.  The Trial Court also refused to grant Plaintiffs relief from the judgment pursuant to Rules 60.02(1) and 60.02(5) of the Tenn. R. Civ. P.[1]  Plaintiffs do not take issue with, not could they realistically do so, the Trial Court's determination that the state of the record required summary judgment be granted Defendant once Dr. Bussey's affidavit was stricken.  Although the Trial Court's striking of Dr. Bussey's affidavit is not directly challenged on appeal, it will be helpful to discuss the propriety of the striking of this affidavit prior to addressing the Trial Court's denial of Plaintiffs' motion pursuant to Rules 59.04, 60.02(1) and 60.02(2).

In a medical malpractice action, the claimant has the burden of proving: (1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he or she practices or in a similar community at the time the alleged wrongful action occurred; (2) the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and (3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.  Tenn. Code Ann. § 29-26-115.  This burden must be met with competent evidence.

Recently, our Supreme Court in *Seffernick v. Saint Thomas Hospital*, 969 S.W.2d 391 (Tenn. 1998) affirmed the striking of a physician's affidavit in a malpractice action when the trial court determined that physician's testimony was untrustworthy.  In *Seffernick*, the plaintiff filed a malpractice action after losing sight in one of his eyes.  The plaintiff claimed that the defendants failed to properly treat his eye injury.  *Id*. at 392.  The defendants filed a motion for summary judgment supported by the affidavit of Dr. Yarborough, one of the defendants.  *Id.*  The plaintiff responded by filing the affidavit of Dr. Worthington, who stated that Dr. Yarborough had deviated from the standard of care in treating the plaintiff.  One of the claimed deviations was not applying Garamycin Ointment to the plaintiff's eye injury.  *Id.*  Based on Dr. Worthington's affidavit, the trial court held that summary judgment was not appropriate and denied the defendants' motion.  *Id.*  During his deposition, however, Dr. Worthington admitted that the emergency room records showed

---

[1] This Court granted Plaintiffs three extensions of time to file their brief.  Once the brief was filed, there were no citations to the record as required by Rule 6 of the Rules of the Court of Appeals.  The entire brief discusses whether the Trial Court abused its discretion in dismissing this case as a sanction for failing to cooperate in the discovery process pursuant to Rule 37.02 of the Tenn. R. Civ. P.  Nowhere in the record is there any indication that this matter was dismissed as a sanction against Plaintiffs or their counsel pursuant to Rule 37.02 or otherwise.  The Trial Court did, however, express concerns about Plaintiffs' counsel's compliance with Rule 11 of the Tenn. R. Civ. P.

that Garamycin Ointment had been applied. He further admitted that he could not say that Dr. Yarborough's actions actually resulted in the alleged harm to the plaintiff. *Id.* Based on this deposition testimony, the trial court granted the defendant's Motion to Strike the affidavit of Dr. Worthington finding:

> that there is an inadequate factual and scientific basis for the testimony of Dr. Worthington, that Dr. Worthington's testimony will not substantially assist the trier of fact, that many material aspects of Dr. Worthington's testimony, comparing his affidavit with his August 30, 1995, deposition testimony, cannot be reconciled, and that Dr. Worthington's opinions are, fundamentally, untrustworthy.

*Seffernick*, 969 S.W.2d at 392. After striking the affidavit of Dr. Worthington, the trial court reversed its earlier determination and granted the defendants' motion for summary judgment. *Id.* at 393. The Court of Appeals reversed the trial court. On appeal, our Supreme Court reversed the Court of Appeals and affirmed the trial court's granting of summary judgment. According to the Supreme Court, pursuant to Tenn. R. Evid. 703, "a trial court must disallow testimony in the form of opinion or inference when the underlying facts or data indicate a lack of trustworthiness." *Seffernick*, 969 S.W.2d at 393 (citing *McDaniel v. CSX Transportation, Inc.,* 955 S.W.2d 257, 264-65 (Tenn. 1997)). It was further stated that Tenn. R. Evid. 703 is "designed to encourage trial courts to take a more active role in evaluating the reasonableness of the expert's reliance upon the particular basis for [the expert's] testimony." *Seffernick*, 969 S.W.2d at 393. Because the trial court had not abused its discretion in striking the affidavit of Dr. Worthington, the granting of summary judgment was affirmed. *Id.*

In the present case, Dr. Bussey indicated that he was not "comfortable" giving his deposition and did not think that this lawsuit would go as far as it had gone. He clearly was unwilling or unable to stand by the assertions he swore to in his affidavit. As a result, his affidavit was not trustworthy and was properly stricken by the Trial Court. The admissibility of Dr. Bussey's expert testimony by affidavit is within the discretion of the Trial Court. *See Seffernick* at 393. Once this happened, what the Trial Court was left with was a case that had been languishing around for years on the docket only because it had been restored to the active docket with the late filing of an affidavit that turned out to be unreliable and was properly stricken. It is against this background that the appeal must be evaluated.

Plaintiffs assert on appeal that the Trial Court erred in (1) refusing to alter or amend the judgment pursuant to Rule 59.04, and (2) refusing to grant Plaintiffs relief from the judgment pursuant to Rules 60.02(1) and 60.02(5) of the Tenn. R. Civ. P. Our scope of review is to determine if the Trial Court abused its discretion in denying the motion. *See Bradley v. McLeod*, 984 S.W.2d 929 (Tenn. Ct. App. 1998)(reviewing the denial of a Rule 59.04 motion on the basis of whether the trial court abused its discretion); *Federated Insurance Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000)(a trial court's granting of relief pursuant to Rule 60.02(5) will be reversed only for an abuse of discretion); *Toney v. Mueller Co.*, 810 S.W.2d 145, 147 (Tenn. 1991)("A motion for relief from

a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge; the scope of review on appeal is whether the trial judge abused his discretion.").

Rule 59.04 of the Tenn. R. Civ. P. provides that a motion to alter or amend a judgment must be filed and served within 30 days after the entry of the judgment. This Rule applies to final judgments. Rule 54.02, which is similar, applies to motions to revise interlocutory orders. In *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000), our Supreme Court listed several factors that should be considered when additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of partial summary judgment. While *Harris* deals with Rule 54.02, the approach and language used by our Supreme Court is instructive. It was observed in *Harris* that there were no Tennessee cases discussing the applicable standard a trial court should apply in ruling on a Rule 54.02 motion to revise a partial summary judgment. The Court, therefore, discussed cases under Rule 59.04, which it concluded offered guidance. *Harris*, 33 S.W.3d at 744. In so doing, two separate standards articulated by the Middle and Western Sections of this Court interpreting Rule 59.04 were rejected, at least insofar as Rule 54.02 is concerned. Specifically, *Harris* rejected the decision of the Western Section of this Court in *Schaefer v. Larsen*, 688 S.W.2d 430 (Tenn. Ct. App. 1984) wherein that Court refused to apply the stringent newly discovered evidence rule to motions to alter or amend under Rule 59.04, holding that such motions should be looked upon favorably where the litigants had not yet been afforded a trial. *Harris*, 33 S.W.3d at 743-44. The *Harris* Court also rejected the holding of the Middle Section of this Court in *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998), that a Rule 59.04 motion "should not be used to alter or amend a summary judgment if it seeks to raise new, previously untried legal theories, to present new, previously unasserted legal arguments, or to introduce new evidence that could have been adduced and presented while the summary judgment motion was pending." *Harris*, 33 S.W.3d at 744. Striking a middle ground between the opinions in *Schaefer* and *Bradley*, the Supreme Court in *Harris* held that when additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, the trial court should consider the following factors, when applicable:

1)      the movant's efforts to obtain evidence to respond to the motion for summary judgment;

2)      the importance of the newly submitted evidence to the movant's case;

3)      the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment;

4)      the likelihood that the nonmoving party will suffer unfair prejudice; and

5)      any other relevant factor.

*Harris*, 33 S.W.3d at 745.

Our Supreme Court in *Harris* noted that the issue of what standard to apply in ruling on a Rule 59.04 motion to alter or amend was not directly at issue and, therefore, beyond its reach in that case. The Court went on to state, however, that "many of the same considerations discussed herein would be applicable when a litigant submits additional evidence as part of a Rule 59.04 motion to alter or amend a summary judgment." *Harris*, 33 S.W.3d at 746 n.4.

Applying the "considerations" discussed in *Harris* to the abuse of discretion standard, we conclude that the Trial Court did not err in denying Plaintiffs' Rule 59.04 motion. The alleged medical malpractice took place on approximately September 9, 1994. The Order denying Plaintiffs' motion pursuant to Rule 59.04 was entered on March 30, 2000. Over 5 ½ years had passed since the alleged malpractice and the final Order dismissing the case, and Plaintiffs had not produced any competent medical evidence to overcome Defendant's summary judgment motion. Based on the record, it does not appear that Plaintiffs even began looking for a medical expert until they were on the eve of dismissal over three years after the original lawsuit was filed. Plaintiffs have made a minimal and unsuccessful effort to secure competent medical proof and have set forth no adequate explanation which would convince us to set aside the Trial Court's judgment. In addition, the likelihood that Defendant would be unfairly prejudiced by the granting of Plaintiffs' motion to alter or amend has been substantially increased due to the significant amount of time that has elapsed. Of particular note is the fact that Plaintiffs never did provide the Trial Court with any "additional" evidence. All Plaintiffs did was request additional time in which to try and locate a new expert. We are unable to evaluate the importance this evidence may have to Plaintiffs' case since no such evidence was presented by Plaintiffs. This Court can only guess how long it might take for Plaintiffs to secure this potential proof, assuming they even can locate an expert to assist them. *See Donnelly v. Walter*, 959 S.W.2d 166 (Tenn. Ct. App. 1997)(affirming the trial court's refusal to reconsider its granting of summary judgment in a malpractice case when the plaintiff failed to support her motion to reconsider with any actual evidence making out a disputed material fact as to the merits of the lawsuit). We affirm the denial of Plaintiffs' motion to alter or amend the judgment pursuant to Rule 59.04.

Next, Plaintiffs claim that the Trial Court erred in denying them relief from the judgment pursuant to Rules 60.02(1) and 60.02(5) of the Tenn. R. Civ. P. These Rules provide as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect; . . . or (5) any other reason justifying relief from the operation of the judgment.

Rule 60.02 is not for use by a party merely because he or she is dissatisfied with the results of the case. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991); *NCNB National Bank*

*of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). The principle of finality is firmly embedded in the procedural rules and, therefore, Rule 60.02 is an escape valve that should not be easily opened. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). "[M]ere negligence or inattention of a party is no ground for vacating a judgment against him. Carelessness is not synonymous with excusable neglect." *Food Lion v. Washington County Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). The burden is on Plaintiffs in the present case to show why they were justified in failing to avoid any mistake, inadvertence, surprise, or neglect. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991); *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn. 1978).

As discussed above, over 5 ½ years elapsed between the alleged malpractice and the final Order dismissing the case, and Plaintiffs had produced no competent medical evidence to contest Defendant's summary judgment motion. This fact is not changed because Plaintiffs' expert later determined that he could not or would not back up what he originally said in his affidavit. It was Plaintiffs' duty under Rule 56 to provide competent medical proof. It was nine months after filing before the Rule 60.02 motion was decided by the Trial Court, and no competent medical evidence was filed by Plaintiffs in the interim. There is no proof in the record which would allow a conclusion that Plaintiffs have met their burden of showing that they were justified in failing to avoid the claimed surprise. We affirm the denial of Plaintiffs' motion pursuant to Rule 60.02(1).

We are further of the opinion that Rule 60.02(5) provides Plaintiffs no basis for relief. Despite its broad language, Rule 60.02(5) is construed narrowly. *Federated Insurance Co. v. Lethcoe*, 18 S.W.3d 621, 625 (Tenn. 2000); *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. App. 1992). The standards of Rule 60.02(5) are even more demanding than those applicable to the other grounds for Rule 60.02 relief. *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn App. 1990)(citing *Tenn. Dept. of Human Services v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). This Rule is not for the purpose of relieving a party of free, calculated and deliberate choices that have been made. *Federated Insurance Co. v. Lethcoe*, 18 S.W.3d 621, 625 (Tenn. 2000). A party remains under a duty to take legal steps to protect his or her own interests. *NCNB National Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Magnavox Co. of Tenn. v. Boles & Hite Constr. Co.*, 583 S.W.2d 611, 613 (Tenn. Ct. App. 1979). Rule 60.02(5) is intended to provide relief only in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship. *Federated Insurance Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). We find no such extraordinary circumstances or extreme hardship present in this case. Plaintiffs did not take necessary steps to protect their legal interests by furnishing the Trial Court with *competent* medical proof sufficient to defeat Defendant's summary judgment motion. Plaintiffs had more than ample time to provide this necessary proof. We affirm the denial of Plaintiffs' motion pursuant to Rule 60.02(5).

## **Conclusion**

The judgment of the Trial Court is affirmed, and this matter is remanded for the collection of costs below. Costs of this appeal are taxed to the Appellants, Freddie Dean Smith and Anita Ann Smith, and their surety.

_____
D. MICHAEL SWINEY, JUDGE