# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 2003 Session

## MIKE HALL and CONNIE HALL  v. CLIFFORD HOUSTON

### Appeal from the Circuit Court for Maury County
### No. 9871   Stella Hargrove, Circuit Judge

---

### No. M2002-01371-COA-R3-CV - Filed July 21, 2003

---

Defendant, Clifford Houston executed a lease and contract to purchase real property with the plaintiffs Connie and Mike Hall.  Upon failure to pay the entire amount of the rent and allow an inspection, the plaintiffs  filed a detainer warrant, which the general sessions court  granted.  The case was appealed to the circuit court where the judge affirmed the award of possession to the plaintiffs, and ordered the forfeiture of the initial deposit in the purchase agreement.  Defendant, Houston, appealed the trial court's decision.We affirm the possession, the judgment for unpaid rent, reverse the deposit award and remand the case for determination of attorney's fees.

### Tenn.  R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court  Affirmed in Part; Reversed in Part; and Remanded

MARIETTA M. SHIPLEY, Sp. J., delivered the opinion of the court, in which BEN CANTRELL AND PATRICIA J. COTTRELL , joined.

David E. Danner, Nashville, Tennessee for the appellants, Clifford Houston.

D. Scott Porch, IV,  Columbia, Tennessee, for the appellees, Mike Hall and Connie Hall.

**OPINION**

This is an action construing a Lease Agreement with Option to Purchase with an accompanying Real Estate Sales Contract. Clifford Houston, defendant, buyer/lessee and Connie and Mike Hall, plaintiffs, sellers/lessors executed the lease and purchase agreement. When Mr. Houston did not pay on a timely basis and refused to allow an inspection of the premises, the Halls took out a general sessions detainer warrant. The general sessions judge found that Mr. Houston had breached the Lease Agreement only, gave possession of the premises to the Halls, ordered a small judgment and attorneys fees. Mr. Houston appealed to the circuit court. The trial judge found that Mr. Houston had breached both agreements, gave possession of the premises to the Halls and a judgment for unpaid rent. In addition, the trial judge ordered a forfeiture of the $2500 initial deposit in the Real Estate Sales Contract and awarded reasonable attorneys fees, which have not yet been determined.

## I.   BACKGROUND OF THE FIVE DOCUMENTS AT ISSUE

Clifford Houston, entered into four documents with the sellers, Connie and Mike Hall, on or about October 27 to 29, 2001. Ms. Hall testified that Mr. Houston, an experienced investor had prepared the documents. The first document is the **REAL ESTATE SALES CONTRACT** for the sale of property at 209 Westfield Drive with a price of $119,000. The contract allows Mr. Houston five years to pay off the balance of the note. It requires an initial deposit of $500 on the date of the contract, and $2000 by November 15, 2001. Paragraph 9, entitled **Default by Buyer,** allows for liquidated damages of the initial deposit ($2500) if buyer "fails to abide by the agreements of this contract within the time set forth herein" . Paragraph 8 of the contract, entitled **Examination of Title and Time of Closing** , refers to an Addendum. Buyer's Date of Offer is October 29, 2001. The Real Estate Sales Contract does not refer to the Residential Lease with Option to Purchase.

The **ADDENDUM** referred to in the Real Estate Sales Contract is dated October 27, 2001. The Addendum states in pertinent part:

> 1) Purchaser to take title pursuant to first mortgage and second on the property. Any variation in the principal amount due from the amount shown on the contract shall be added or subtracted from the note held by the seller.
>
> 2) Seller agrees to allow purchaser to show property to prospective tenants prior to the closing date. The closing shall take place when an acceptable tenant is found, but in no event prior to a specified date.
>
> 3) Seller agrees to turn over all escrow and utility company deposits to purchaser.

The third document is **RESIDENTIAL LEASE WITH OPTION TO PURCHASE** , dated October 29, 2001. The lease does not refer to the Real Estate Sales Contract. The rent is $963 per

month.  Paragraph 4, entitled **Utilities.**  states the Lessee is responsible for utilities.  In addition, the hand-written words "assign taxes & Insurance" are added. Paragraph 9 concerns

>**Entry and Inspection**:  Lessee shall permit Lessor or Lessor's agents to enter the premises at reasonable times and upon reasonable notice for the purpose of inspecting the premises or for making necessary repairs

Paragraph 11 is entitled *Security/Option Consideration:*

>The security deposit of $ __N/A_____  shall secure the performance of the Lessee's obligation hereunder.  Lessor may, but shall not be obligated to, apply all or portions of said deposit on account of Lessee's obligations hereunder.  Any balance remaining upon termination date, the deposit shall be returned to Lessee.

Paragraph 18 is entitled *Default:*

>If Lessee shall fail to pay rent when due or perform any term hereof after not less than three (3) days written notice of such default given in the manner required, the Lessor at his/her option may terminate all rights of the Lessee hereunder, unless Lessee, within said time, shall cure such default.         *     *     *     *     *

Paragraphs 19 through 29 are entitled  Option to Purchase, Title, Closing, Prorations, Options and Right to Sell.  As stated in the Real Estate Purchase Agreement, the purchase price is $119,000, all cash.  There is no duration of time for the option.

The next  document is the **PERMISSION TO SUBLET**, which simply grants the "resident" the right to sublet for 60 months, the term ending November 15, 2006.

The parties got off to a rather rocky start.  Mr. Houston paid the initial deposit of $500.00 on the Buyer's Date of Entry, October 27, 2001.  The Halls deposited his $2000 check on  November 16. It was charged off as insufficient funds on November 21, 2001. On November 28, 2001 Ms. Hall purportedly signed the fifth document entitled  **DEPOSIT NOTE**, for $2000.   Ms. Hall said she recognized her signature.  However,  she stated that she had signed a receipt with blank areas at both the top and bottom  The Deposit Note  states at the top $2000 and a date of 11/28/01.  The wording is as follows:

>_____ days  after the above date, the undersigned promises to pay to the order of _____ the sum of _____ dollars ($932.95) without interest, payable at _____   [To the side are hand-written words "See Addendum"

>In the event that this is not paid when due and suit is instituted for the collection thereof, the undersigned promises to pay the holder of this note reasonable attorney fees for making such collection.

Below the above paragraph are the handwritten words:

> See Sales Contract from 10/27/01 and the Addendum Also Lease option purchase is void payment are the 1st and second mortgage of the note.

> _____
> Signature ( Connie Hall's signature  on the line)

> This note is given as a deposit in connection with the agreement between _____ (Connie Hall is hand-written in the blank) and _____(Cliff Houston is hand-written in the blank) dated _____(11-28-01 is hand-written in the blank), covering the real property or premises commonly known as _____ (209 Westfield Dr Columbia Tenn 38401 hand-written in the blank)

> This note is void unless agreement is accepted according to its terms.

Per the testimony of Mr. Houston, this note was to repay the insufficient funds check and to clarify that the amount of the rent was $932.95 rather than $963 in the Lease Agreement with Option to Purchase.   In the hearing in May 2002, Ms. Hall said she did not remember this note.[1]

Apparently the rent  issue did not resolve between the parties.  Mr. or Ms. Hall wrote eight letters to Mr. Houston between December 27, 2001 and April 15, 2002.  The letters either referred to the incorrect amount of rent [$963 as opposed to the proffered amount of $932], late payments of the rent,  or unpaid utilities of $37.00.  In several of the letters, Ms. Hall  stated that this was "written notice."  On January 17, 2002, after receiving the only written response from Mr. Houston on January 15, 2002, in which he disputed the utility bill, she asked for an inspection of the house, which would require notice to his tenants.  On February 8, 2002, reminding him of the late payment, she referred the matter to her attorney, Scott Porch. The final letter on April 15, 2002, which was after the General

---

[1]In his Statement of the Proceedings, the appellee reported  that the trial judge stated that she was
> ...very disturbed by this 'Deposit Note', and she held the exhibit up to demonstrate how easily it could be altered to add language above and below the signature line.  The judge stated that it was difficult for her to believe that a 'meticulous woman like Mrs. Hall,' who had demonstrated her deliberate and meticulous record keeping during the trial, would sign this 'Deposit Note' .  The judge  told Mr. Houston that his behavior bordered on fraud.

Sessions Warrant had been issued and heard, stated the familiar late notice for April, the lack of response to the demand for inspection, and the original rental amount of $963.00.

## II.    STANDARD OF REVIEW

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the factual findings below. *Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988);* Tenn. R.App. P. 13 (d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. *NCNB Nat' l Bank v. Thrailkill,* 856 S.W. 2d 150, 153 (Tenn. Ct. App. 1993). In this case there is no transcript, but there is a Statement of Proceedings , filed by the Appellees, which constitutes the Statement of the Evidence, per Tennessee Rule of Appellate Procedure 10, and the Judgment of the Court.

## III.    LEGAL PROCEEDINGS

The Halls had filed a general sessions detainer warrant on February 14, 2002 that sought to void the Real Estate Sales Contract and the Residential Lease with Option To Purchase and obtain a judgment for the February 2002 rent. The defendant filed a counter-claim for costs and attorney's fees. The case was heard on March 20, 2002. The general sessions judge found that the defendant was in breach of the Residential Lease with Option To Purchase and granted a judgment for $159.42, plus reasonable attorneys fees, reserved for further proof.

On March 20, 2002 the Halls filed an appeal with the circuit court. The trial judge became involved in the case on April 24 and 29, 2002, with oral argument in her chambers and by telephone. She ordered the clerk to endorse the check presented by the defendant and an immediate inspection of the premises. On May 1, 2002, following a hearing, she ordered immediate possession of the premises, found the defendant in breach of both the sales contract and the lease document, due to late payment, incorrect payment, and failure to allow inspection. She awarded the deposit of $2500 to the plaintiff along with attorneys fees and costs.

## IV.   LEGAL ISSUES

The appellant raises three issues: 1) Did the appellant Houston breach the lease when he paid rent pursuant to the language in the Addendum, which allowed for a variable amount of rent, and pursuant to the Deposit Note?  2) Did the appellant Houston breach the lease when appellees accepted late payments? 3) Was appellant, Houston's, breach a non-material breach? 4) Should the

appellant, Clifford Houston, be required to forfeit the deposit of $2500 upon breach of the Residential Lease with Option to Purchase? [2]

The real crux of the dispute in this case is whether Mr. Houston breached one or two of the documents, the Real Estate Sales Contract and/or the Residential Lease with Option to Purchase. It was clearly the intent of both parties for Mr. Houston to rent the premises with the option to purchase. The price for the property set in the Real Estate Sales Contract was for $119,000. The option was for five years. The closing costs, responsibilities, etc. were all set out in that contract. The sales contract required two deposits totaling $2500 in the event of default. The sales contract does not mention making rental payments or inspections by the sellers. The lease contract, which did not refer to the sales contract, provides for a specific amount of rent, $963, but did not require a security deposit. The lease states that a lessee is in default if rent is not paid or any other term in non-compliance after three (3) days' notice of the default. The lessor may terminate "all rights of the Lessee hereunder, unless Lessee, within said time (three days) shall cure such default." The lessor, the Halls, sent no less than eight letters following late payments, failure to pay utilities and failure to allow an inspection. Clearly, the trial court found default under the Lease Agreement.

## A. Breach of the Residential Lease with Option to Purchase:

The question here is the relationship between the Lease with Option to Purchase Real Estate Sales Contract, the Addendum, and the Deposit Note. One can make a link between the Real Estate Sales Contract and the Addendum, although the dates are two days apart, in reverse order. The Addendum refers to the principal amount of the first and second mortgage fluctuating, and a final addition and subtraction on the note held by the seller ( presumably at the time of the closing in 60 months.) The Addendum makes no reference to "rent " or a fluctuating monthly figure. Secondly, the Deposit Note which is purportedly signed by Connie Hall makes no reference to anything. It is allegedly an acceptance of the $2000 which was returned as a bad check. The figure inserted of $932 has no logical legal significance. The trial court stated she was "very disturbed" by this Deposit Note and stated that it could have been easily altered. Obviously the trial court gave little credence to the Deposit Note. Without the Deposit Note , there is little credible evidence that Mr. Houston should have paid $932, rather than $963, as stated in the lease. Mr. Houston asserts that the Addendum clearly evidences an intent to pay the lower amount, and thus he cannot have breached the lease. We affirm the trial judge's factual finding that he should have paid $963 . The documents do not otherwise support Mr. Houston's assertion. We affirm the trial judge's ruling that Mr. Houston was clearly in breach of the rental amount.

## B. Late Payments Accepted by the Lessor:

The appellant Houston, in a two sentence paragraph, argues that T.C.A. 66-28-508 should apply in this case. The application of this statute was not raised in the trial court. Even if it had been

---

[2] This issue was not raised by the defendant/appellant, Clifford Houston, in his appeal. Nonetheless, per Tennessee Rule of Appellate Procedure 36, we find that the appellant is entitled to such relief.

raised, this statute does not apply to Columbia, Tennessee by the provisions of the statute itself. T.C.A. 66-28-102. Even if it were applicable, Section 66-28-508, does not waive the landlord's right to receive late payment and still pursue a breach of the lease. Mr. Houston asserts that the Halls had waived their right to the reservation of the receipt of late payments by executing the Addendum and Deposit Note. We have already affirmed the trial court's decision that the Deposit Note was suspect.

The plaintiff further clarifies this issue in his brief by citing *Cain Partnership Ltd. v. Pioneer Inv. Services Co.,* 914 S.W.2d 452 (Tenn. 1996), which addresses the issue concerning the scope of the detainer statute T.C.A. 29-18-104. The court in *Cain* discussed the common law regarding enforcement of a lease and a forfeiture provision. In addition, the court adopted the Restatement of Property 2nd, at section 13.1 stating 'principles of mutuality and fairness should govern the determination and enforcement of the legal rights at issue in this case.' Given that adoption, which allows the landlord to terminate the lease and recover damages, or continue the lease and obtain equitable or legal relief as well as damages, the lease in this case is very clear that after giving three days notice, the lease is breached. Ms. Hall gave Mr. Houston written notice. He was late for four months, and never allowed the inspection. The Halls were "deprived of a significant inducement to the making of the lease" in that they were paying mortgage payments themselves for the property. Clearly the court was correct to declare the lease had been breached. Thus we affirm the trial court's decision on this issue.

### C. Material Breach of Lease

The appellant, Houston, asserts again that T.C.A. 66-28-505(a) is applicable to this case in that the difference of $30.50 is not a material non-compliance, nor is the failure to allow an inspection. As stated in the prior section, the statute does not apply. However, for the sake of argument, if these were the only issues of non-compliance, the appellant might have an equitable defense. The non-compliance seen in its totality is more blatant. The appellant Houston initially paid a deposit with an insufficient funds check, failed to pay the initial utilities payment, never paid the rent on time, did not allow an inspection, and did not obtain insurance on the premises as late as February. The trial court found that the late payment was the basis of the judgment against the appellant Houston. We affirm this decision.

### D. $2500 Deposit - Security Deposit or Liquidated Damages

Paragraph 9, of the Real Estate Sales Contract provides that there will be liquidated damages of the initial deposit if "buyer fails to abide by the agreements of this contract within the time set herein." The Real Estate Sales Contract has no provision for rent or other monthly payments, only a five year term to pay the entire amount. The Lease with Option to Purchase has no Security Deposit. Thus, the only default, would be failure to pay off the entire amount within five years. There is no reference in the Statement of Proceedings or in the trial court's order as to how the Real Estate Sales Contract was breached. It would be a rather harsh result to forfeit essentially a down payment for a difference in rent of $183.00. Therefore, we cannot find that the $2500 deposits should

be forfeited pursuant to the Real Estate Sales Contract, as there is no breach of the Real Estate Sales Contract. We reverse this judgment.

## V.  JUDGMENT

Thus, we affirm the decision of the trial court that possession will be granted to the Halls, as well as a judgment for $220.42 and reasonable attorneys fees. The forfeiture of the $2500 deposit will be reversed. The case is remanded to the trial court for a determination of reasonable attorneys' fees. Costs are taxed to Clifford Houston.

_____
JUDGE MARIETTA SHIPLEY