IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 03, 2014 Session

## DANIEL J. WUNDER v. KAREN ANN WUNDER

**Appeal from the Chancery Court for Sumner County**
**No. 2013DM379     Tom E. Gray, Chancellor**

_____

### No. M2014-00008-COA-R3-CV - Filed December 22, 2014

_____

Mother appeals the trial court's denial of her petition for contempt and for child support arrearages in this post-divorce action. We reverse in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Vacated in Part; and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD P.J.,W.S. and KENNY ARMSTRONG J. joined.

David W. Camp, Jackson, Tennessee, for the appellant, Karen Ann Wunder.

Michael W. Edwards and Russell E. Edwards, Hendersonville, Tennessee, for the appellee, Daniel J. Wunder.

### MEMORANDUM OPINION[1]

This is a post-divorce action. The current appeal arises from an action for civil

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

contempt for the failure to pay child support as provided by the final decree of divorce and marital dissolution agreement ("MDA") incorporated therein. The facts relevant to this appeal are not disputed.

Daniel J. Wunder ("Father") and Karen Ann Wunder ("Mother") were married in 1991; two children were born of the marriage in March 1994 and August 1996. In 1999, Father filed a petition for divorce in the Chancery Court for Madison County. By final decree entered May 5, 1999, the trial court declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129. In its May 1999 order, the trial court found that the parties had entered into an MDA that was reasonable and proper under the circumstances. The trial court ratified and confirmed the MDA and incorporated it into the court's order "as fully as if copied verbatim."

Pursuant to the MDA, custody of the parties' minor children was vested with Mother. Father agreed to pay child support in the amount of $4,000.00 per month, payable on the 15th day of each month beginning May 15, 1999. Father additionally agreed to fund a college trust account for the children in the amount of $800.00 per month per child. The Wunders' MDA provided that "modification or waiver of any of the provisions of [the] agreement shall be effective only if made in writing and executed with the same formality of [the] agreement." It further provided that the "[f]ailure of either party to insist upon strict performance of any of the provisions of [the] agreement shall not be construed as a waiver of any subsequent default of the same or similar nature." The MDA also contained a specifically numbered provision titled "Reduction of Child Support." That provision stated:

> The parties to this agreement affirmatively acknowledge that no action by either of these parties, individually or acting in concert with one another, will be effective to reduce the child support set forth in this agreement after the due date of each payment, and further the parties understand that Court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated by the terms of this agreement.

In November 1999, Father filed a motion to modify the final decree. In his motion, Father asserted that his income had decreased substantially as a result of a change in employment. He prayed the court to decrease his child support obligation to the amount provided by the child support guidelines and to reduce his obligation to fund the children's college fund. Following a hearing in January 2000, the trial court reduced Father's child support obligation to $3,194.00 per month and reduced his obligation to fund the children's college fund to $485.00 per month for both children, to be allotted equally. The trial court stated that the reduction was "temporary" and ordered Father to pay support as ordered "until further orders of the [c]ourt." It also stated that "[a]ll other portions of the Martial Dissolution Agreement shall remain the same." The parties' eldest child reached the age of 18 in March 2012 and graduated from high school in May 2012. Father unilaterally reduced his child support payments to $2,000 per month upon the child's graduation from high

school.

In January 2013, Mother filed a motion for civil contempt asserting that, beginning May 2012, Father had failed to pay child support as ordered by the court. She asserted that Father was gainfully employed and able to pay child support as ordered, that his failure to pay child support was intentional and willful, and that he was in arrears in an amount not less than $17,637.42. She prayed for a finding of contempt, a judgment in the amount of the arrearage plus interest at the statutory rate retroactive to May 2012, attorney's fees and costs. It is undisputed that beginning February 2013, Father increased his child support payments to $2,100.00 per month and he also paid Mother $900.00 in February 2013.

Upon motion by Father and over Mother's objection, the matter was transferred to the Chancery Court for Sumner County in September 2013. Following a hearing in November 2013, by order entered December 16, 2013, the trial court found that Father did not file a petition to modify his child support obligation but "took it upon himself to reduce his child support obligation when the son . . . graduated from high school[,]" which was approximately two months after the child attained the age of majority. The trial court further found that Father "made a proration reducing the [c]ourt ordered support." The trial court concluded that, in Tennessee, a parent does not have a legal duty to support a child after the child attains the age of majority and graduates from high school and that Father accordingly did not have an obligation to pay child support for the eldest child after May 2012. Although it does not appear from the record before us that the trial court determined whether the prorated child support amount paid by Father complied with the child support guidelines, it nevertheless determined that he was not in arrears. The trial court found that Father accordingly was not in contempt for failing to pay child support as ordered by the court and denied Mother's petition for contempt and request for attorney's fees. Mother filed a notice of appeal to this Court on December 30, 2013.[2]

## Discussion

The trial court based its judgment in this case on its interpretation of Tennessee Code Annotated § 34-1-102(b) and *Brooks v. Brooks*, No. M2007-00351-COA-R3-CV, 2009 WL 928283 (Tenn. Ct. App. April 6, 2009). As the trial court observed in its order, Tennessee Code Annotated § 34-1-102(b) provides that parents have a duty to support their child after the child reaches eighteen years of age if the child is in high school. The statute provides that

[2]In May 2014, Father filed a motion in this Court to dismiss the appeal for lack of a final judgment. In his motion, Father asserted that he filed a motion for attorney's fees on December 30, 2013; that his motion was filed before Mother filed her notice of appeal; that his motion should be construed a Rule 59.04 motion to alter or amend the judgment; and that the trial court had not yet ruled on the motion. By order entered June 3, 2014, we concluded that the trial court's judgment was not final and granted Mother 60 days in which to obtain a final judgment. On July 2, 2014, the trial court denied Father's request for attorney's fees. This matter was heard by the Western Section of this Court sitting in Nashville on December 3, 2014.

"[t]he duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first." Additionally, in *Brooks* we held that, except for statutorily defined situations, a child support order for a particular child generally "expires at the time the child reaches majority." *Brooks v. Brooks*, 2009 WL 928283, at *6. We also stated in *Brooks*:

> [A] reduction in child support due to the emancipation of a child should not be considered a modification as that term is used in Tenn. Code Ann. 35-5-101(f)(1), but instead is simply the application of a rule of law derived from the legal principle that parents generally owe no duty of support to their adult children. The Tennessee Supreme Court has specifically stated that proration of child support for an emancipated child is not a retroactive modification of the child support award and its application does not require a petition to, or an order from, the court.

*Id.* (citations and internal quotations omitted). We also noted in *Brooks*, however,

> that a trial court is not *obligated* to apply proration where circumstances justify the original total amount of support for the remaining minor children and it is also true that a formulaic proration may not be appropriate in many situations. Further, the adoption of the child support guidelines for setting the amount of child support has rendered "proration" obsolete. However, the premise for, and the risks of, unilaterally reducing one's child support payment on the basis of one child reaching majority remain the same. While an obligor parent may unilaterally reduce child support when a child reaches majority, where the support order covers more than one child it is more prudent to seek a modification of the child support obligation in the trial court.
>
> Unilateral reduction of child support in such situations is risky in part because of the difficulty of calculating the correct amount of child support under the current guidelines for the remaining minor child or children and of predicting with certainty whether or not the trial court would be inclined to deviate upward from the guidelines or whether increased income would result in a higher support payment. Thus, if the trial court were to reach a different conclusion from that of the obligor parent as to the amount of such reduction, the obligor could ultimately be subject to a judgment for arrearages and other consequences.

*Id.* at *7 (internal quotations and citations omitted).

Similarly, in *Corder v. Corder* we addressed a situation wherein an obligor father "unilaterally reduced his child support payments, even though no court order had been

entered permitting him to do so." *Corder v. Corder*, 231 S.W.3d 346, 351 (Tenn. Ct. App. 2007). We noted in *Corder* that, although under appropriate circumstances an obligor parent may prorate child support payments without a court order after a child is emancipated, "it is prudent to request that the trial court modify the child support obligation." *Id.* at 359. We also noted that proration without a court order is less appropriate when the child support order sets forth a lump sum payment for all the children. *Id.*

The case currently before us is inapposite to *Corder* and *Brooks*, however, which did not involve agreements entered into by the parties. *See id.* at 355 n.5. In this case, the parties' MDA unambiguously obligated Father to pay child support "without reduction" and provided that "[c]ourt approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated by the terms of this agreement." The 16-page, comprehensive MDA contained in the record does not include a term providing for unilateral proration or automatic reduction of child support upon the eldest child's graduation from high school or attainment of the age of majority.

It is well-settled in Tennessee that parties are "'free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law.'" *Vick v. Hicks*, No. W2013–02672–COA–R3–CV, 2014 WL 6333965 (Tenn. Ct. App. Nov. 17, 2014) (quoting *Holt v. Holt*, 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988)). Parents may "contractually assume[] a duty" to support their children beyond the age of majority. *Corder*, 231 S.W.3d at 356. The Wunders' MDA, which was incorporated into the final decree of divorce, unambiguously obligated Father to pay child support as agreed and without reduction unless and until his obligation was modified by court order. In any order removing the parties' eldest child from Father's obligation of support, moreover, the trial court must determine the amount of his child support obligation for the parties' younger child.

## Holding

In light of the foregoing, we reverse the trial court's determination that Father was permitted to reduce his child support payments without court order when the parties' eldest child attained the age of 18 and graduated from high school. We accordingly reverse the trial court's finding that Father was not in arrears. We vacate the trial court's judgment with respect to Mother's petition for contempt and request for attorney's fees. This matter is remanded to the trial court for further proceedings consistent with this Opinion, including a determination of the amount of child support arrearages and attorney's fees, if any, due Mother. Costs on appeal are taxed to the Appellee, Daniel J. Wunder.

_____
ARNOLD B. GOLDIN, JUDGE